Kaplan, Mitchell H., J.
This case is before the court on the defendants’ motion to dismiss. Defendant URS is the general contractor on a project at Logan Airport. It entered into a labor and material payment bond, as principal, with the two insurance company defendants, as sureties, guaranteeing payment to all subcontractors, including so-called sub-subcontractors, on the project for labor and/or materials provided to the project. The plaintiff, Riley, is such a sub-subcontractor. Riley alleges, among other things, that it has provided labor and materials to the project for which it has not been paid and has met the other precondi *435 tions to its right to prosecute a suit for payment under the bond. The complaint is pled in five counts. In count I, Riley seeks to recover against all three of the defendants under the bond. Counts II through v. assert claims against URS for: violation of Chapter 93A; intentional interference with contractual relations; defamation; and concerted action, respectively.
URS moves to dismiss Counts II through v. because Riley alleges only economic loss as a result of URS’s wrongful conduct alleged in those counts and “a plaintiff cannot recover in negligence for purely economic loss.” The doctrine upon which URS relies has never been applied to the business torts and defamation claim alleged by Riley. Indeed, these kinds of claims seldom are based on injury to person or property. URS’s reliance on the explanation of the application of the economic loss rule to claims for supplying a defective product or product design set out in Berish v. Bornstein, 437 Mass. 252, 267-68 (2002), is completely misplaced. The motion to dismiss Counts II through v. is denied.
With respect to Count I, the defendants contend that Riley has no right to payment on the bond as a matter of law because Riley’s sub-subcontract (to which URS is not a party) includes a so-called “pay-when-paid” clause and the counterparty to Riley’s sub-subcontract has allegedly not been paid. Defendants argue that since it is undisputed that Riley has no contract claim against the party with whom it is in privity (Riley’s subcontractor, who Riley has not named as a defendant in this action) it cannot recover on the bond. Defendants are mistaken. Sub-subcontractors are specifically included in the definition of claimant under the bond. The bond provides that:
eveiy claimant. . . who has not been paid in full before the expiration of a period of ninety days after the date on which the last of such claimant’s work or labor was done or performed or materials were furnished by such claimant may sue on the bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.
In Coastline Fire Protection Co. v. Peabody Construction Co., Inc., the court considered the precise argument now advanced by URS and held:
the payment bond does not refer to any of the payment provisions (i.e. pay-when-paid clause) contained in the subcontract or refer to any subcontract at all. Even if the bond had incorporated the subcontract by reference, the holding in Canam, 34 Mass.App.Ct. at 943, contains persuasive language that Travelers would not be bound by the pay-when-paid clause and would not be able to use it as a defense. Therefore, this court determines that Travelers cannot assert the pay-when-paid defense [in a suit on the bond).
That holding is equally applicable here. Even if one could say that a reasonable interpretation of the bond was that the sureties could only be liable to a claimant who could prove its claim against the counterparty to its sub-subcontract, i.e., that the sureties could assert the counterparty’s defenses, that would only be an interpretation of that language. Another, at least as reasonable interpretation, is that if the sureties had wanted to assert such a defense it had to have been expressly stated in the bond, as the bond was intended to serve as a promise by the sureties that all subcontractors who properly provided material or labor on the project would be paid for their work. The defendants interpretation would place all subcontractors and sub-subcontractors on the project at risk that if the counterparty to their contract did not get paid, for example as a result of an intervening bankruptcy, they could not recover for the labor and services that they provided. The bond is clearly a document to be construed against its draftors — the insurers who were paid a premium to write it.
The question remains whether URS, the principal on the bond, is potentially liable to URS under the bond jointly and severally with the sureties. The bond is however a tri-partite arrangement between the principal, the surety, and the obligees or claimants. It is a promise on the part of the surety to make payment to the claimants, if the principal does not. See “Surety Bonds: A Basic User’s Guide for Payment Bond Claimants and Obligees,” 22 Constr. Law 5 (2002). Riley argues that in the construction industry it is common place to sue the contractor/principal as well as the sureties. It may be common place in circumstances where the claimant has a claim for non-payment against the principal on the bond; however, here Riley is a sub-subcontractor. It has no contract claim against URS because it is not in privity with URS. It has chosen not to sue the counterparty to its sub-subcontract, perhaps because it has a defense that the sureties cannot assert. The bond is a promise made to Riley by the sureties not by the principal. Riley therefore has no claim against URS under the bond, and Count I must be dismissed with respect to URS.
ORDER
For the foregoing reasons, the defendants’ motion to dismiss is ALLOWED, in part, and DENIED, in part, as follows: Count I is dismissed as to the defendant URS, but not as to the defendants Federal Insurance or National Union; the motion to dismiss Counts II through v. is denied.